IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) GRACE BRYANT,<br><br>　　Plaintiff,<br><br>vs.<br><br>(1) INDEPENDENT SCHOOL DISTRICT NO. 16 OF MAYES COUNTY, OKLAHOMA, a/k/a SALINA SCHOOL DISTRICT, a/k/a SALINA PUBLIC SCHOOLS; and,<br><br>(2) JOHN Q. HORNER, an individual.<br><br>　　Defendants. | CASE NO: 22-cv-00510-GKF-CDL<br><br>Attorney Lien Claimed<br><br>Jury Trial Demanded |

## COMPLAINT

COMES NOW, the Plaintiff, Grace Bryant ("Plaintiff", "Grace", "Grace Bryant" or "Ms. Bryant"), and for her Complaint against the above-named Defendants, states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. At all relevant herein, Grace Bryant was a resident of the State of Oklahoma, residing in Salina, Mayes County, Oklahoma.

2. Defendant Independent School District No. 16 of Mayes County, Oklahoma, *a/k/a* Salina School District, *a/k/a* Salina Public Schools ("School District" "Salina Public Schools") is a public educational institution located in Mayes County, Oklahoma. The School District is an Oklahoma school district organized and existing under the laws of the State of Oklahoma and has its principal office in Mayes County, Oklahoma. Salinma School District is an educational institution as defined in 20 U.S.C. § 1681(c). The School District receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688. The School

District may be served with process at its principal place of business: Attn: Jackie Ball, Clerk of the Board of Education, 212 E. Ferry Street, Salina, OK 74365.

3. Defendant John Q. Horner ("Horner") was a teacher at the Salina Middle School. John Q. Horner may be served at his place of residence: 113 Oakwood Drive, Tahlequah, OK 74464-4167.

4. Defendant Horner was acting as a teacher on behalf of Salina School District, except as to those claims that are intentional torts.

5. This Court has subject matter jurisdiction over Plaintiff's claims because they involve questions arising under federal law, including 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX").

6. This Court has personal jurisdiction over Defendants because the actions giving rise to Plaintiff's lawsuit occurred in Mayes County, Oklahoma.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantioal part of the events or omissions giving rise to the claim occurred in this judicial district.

8. This action arises from the sexual harassment, molestation, sexual assault, and deprivation of bodily integrity suffered by a young student at Salina Public Schools.

**RELATED OR COGNATE CASE**

9. This action is related to and is similar to a pending action involving twelve (12) young students who also suffered sexual harassment, sexual assault, and deprivation of bodily integrity at Salina Public Schools.[1]

---

[1] *See, Bark, et al. v. Independent School District No. 16 of Mayes County, Oklahoma, et al.,* Case No. 21-CV-213-CVE-CDL, United States District Court, N.D. Oklahoma.

10. Thus, pursuant LCvR42-1 this Court can anticipate a motion to consolidate the instant case with the lowest numbered case of *Bark, et al. v. Independent School District No. 16 of Mayes County, Oklahoma, et al.,* Case No. 21-CV-213-CVE-CDL, United States District Court, N.D. Oklahoma because the cases: a) arise from substantially the same events; b) involve substantially the same parties; c) call for determination of substantially the same questions of law; and/or d) would entail substantial duplication of labor or unnecessary court costs or delay if heard by different judges. Therefore, it should be anticipated that a motion to consolidate will be filed in the lowest numbered case assigned.

### PREVIOUS LEGAL DISABILITY OF GRACE BRYANT

11. Plaintiff is a senior at Salina High School and will graduate from the School District in 2023. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *See, Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).

12. Grace Bryant has been under the weight of a legal disability until she turned eighteen (18) years of age. Plaintiff therefore can personally bring this lawsuit as late as one (1) year *after* attaining majority status under Oklahoma state law. Majority status is attained when a person reaches the age eighteen (18) years:

> *Minors, except as otherwise provided by law, are persons under eighteen (18) years of age.*
>
> *See* 15 O.S. § 13.

### FACTUAL BACKGROUND[2]

---

[2] **Note:** In the related case of *Bark, et al. v. Independent School District No. 16 of Mayes County, Oklahoma, et al.,* Case No. 21-CV-213-CVE-CDL, United States District Court, N.D. Oklahoma a Protective Order was entered on September 21, 2021. (Docket Entry 18). As a result, there are additional relevant facts of actual knowledge of the School District prior to March 13, 2019 that Plaintiff's counsel can not utilize at this time until that Protective Order is modified. Therefore, this "Factual Background" is substantially the same as Plaintiffs' First Amended Petition filed in State Court on April 29, 2021 and entered on the federal civil docket May 17, 2021 in *Bark*, after removal ***except as to the paragraphs regarding Grace Bryant.*** *See,* ¶'s 37 and 38, herein.

13. The School District should provide a safe learning environment for its students. Salina Public Schools failed to do so.

14. The School District failed to provide its students an environment free of a sexual predator, Defendant Horner.

15. While on the Salina Middle School grounds and during school hours, Defendant Horner repeatedly preyed on female students, even after parents and students informed the School District of the sexual predator's misconduct via the School District's agents and employees.

16. Plaintiff was a victim of this sexual predator.

17. The sexual predator, Defendant Horner, inappropriately touched victims.

18. John Q. Horner ("Horner") was a teacher at Salina Middle School.

19. Horner's Oklahoma teaching certificate number was 238359.

20. Horner had over thirty years of teaching experience and was most recently employed by the School District.

21. On or about March 15, 2019, a student came forward with accusations of Horner touching her inappropriately and making statements that made her feel uncomfortable.

22. After she came forward, the School District stated they had completed an internal investigation with a finding of no further investigation needed.

23. The weekend after the girl came forward, the Salina Police Department was contacted by several parents of other female students, who had similar allegations about Horner and his actions at the school.

24. The Salina Police Department began an investigation after the parents came forward.

25. As part of the investigation, Salina Police Department interviewed at least ten (10) female students that provided information about Horner's inappropriate behavior between October 2018 and March 2019.

26. The police investigation found claims regarding Horner inappropriately touching or making inappropriate comments dating back to at least October 2018 and continuing up until March of 2019.

27. The police investigation discovered that Horner's behavior was so bad that upper classmates warned their lower classmates to be prepared for Horner to make them uncomfortable while in his classroom.

28. Specifics of the investigation determined that Horner had touched girls in various areas including their shoulders, lower back, buttocks and inner thighs.

29. For example, T.H. was complaining about having sore calves. Horner had T.H. sit at his desk and began massaging her calves but moved his hands up to her thigh area. The bell rang to change classes, but Horner told T.H. to stay and continued to rub her legs.

30. On another occasion, S.I. had on a pair of jeans with a rip in them that was high in the upper thigh of the jeans. Horner placed his finger in the hole and made a circular motion while his finger was in the hole for 5-10 seconds.

31. I.C. had her thighs and lower back touched by Horner. I.C. would be touched by Horner to the point of annoyance and would intentionally move seats or away to avoid Horner when she was in his classroom.

32. S.P. had her thigh rubbed by Horner while he helped her with class work in his classroom. She has also witnessed Horner touch students inappropriately.

33. E.S. was subjected to Horner placing his hand on her leg. He would start low on the leg and move high on the leg to the thigh. Sometimes he would squeeze her leg while doing it in his classroom.

34. A.J. was subjected to Horner touching her leg and moving his hand up to her thigh.

35. S.B. was subjected to Horner touching her leg on multiple occasions.

36. Horner asked L.H. when it would be his turn to be her boyfriend. Horner had gotten L.H.'s phone number and texted her enough times that she blocked him. Horner told L.H. that she looked like his wife and that his wife was one of his students when he was a teacher at another school.

37. Plaintiff Grace Bryant suffered sexual harassment, sexual assault, and deprivation of bodily integrity committed against her by Horner by touchin her knee, thigh, and back.

38. Plaintiff Grace Bryant was forensically interviewed on April 11, 2019.

39. On or near January 16, 2020, a Probable Cause Affidavit for Arrest Warrant was issued for Horner relating to the anticipated charges for the offenses of Lewd or Indecent Proposals to a child under the age of 16, a felonious violation of 21 O.S. § 1123.

40. The School District has previously been on notice of Horner's inappropriate actions but ignored the notice.

41. The School District received notice as early as 2014 of Horner's actions.

42. For example, in 2014 a female student told her mother and grandmother of Horner inappropriately touching her and making her feel uncomfortable.

43. The grandmother immediately went to the Salina Middle School and spoke with the principal.

44. The principal informed the grandmother that she believed the student was embellishing her story because she was performing poorly at math.

45. After the grandmother spoke with the principal of Salina Middle School, the mother of the student spoke with the same principal.

46. The principal also informed the student's mother that she believed the girl was embellishing her story.

47. The School District received notice again in 2015 but again failed to take any action to protect its female students.

48. Even a boy attending Salina Middle School was concerned enough to tell his mother about Horner's action towards the girls during the fall semester of 2015.

49. The boy came home after school and told his mother of a girl that was sitting on Horner's lap.

50. The boy told his mother the girl did not want to sit on Horner's lap but that Horner forced the girl to sit on his lap.

51. The mother then called the principal of the Salina Middle School directly and discussed the issue on the phone.

52. The principal of the Salina Middle School informed the mother that an entire group of boys had actually come forward and talked to the principal about Horner's actions towards the girls.

53. Another mother met with both the principal of the Salina Middle School and the Superintendent of the School District at the same time to discuss her concerns of Horner when her daughter was in the 8th grade.

54. Whenever learning about Horner's actions, the School District silenced anyone who spoke against Horner.

55. The School District specifically told students not to discuss the issue with their parents.

56. When a student was heard talking about Horner's actions in the school, the student was threatened with being sent to the office for discipline.

57. Horner molested, made lewd comments, or inappropriately touched or felt the body or private parts of female students (including criminal violations of 21 O.S. § 1123(A)(2)), including the Plaintiff, while at the School District, on campus, and during school hours.

58. The School District failed to implement and/or execute policies in regard to the reporting of sexual misconduct to state agencies to protect students from further abuse; to end the access to students of suspected predators; and the inadequacy of these polices resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

59. The School District failed to ensure that all of its employees, including teachers and administrators, were properly hired, trained, retained, and supervised to perform their jobs.

60. The School District is responsible for the acts and omissions of its employees, including its teachers and administrators, during the course and scope of their employment.

61. The Salina Board of Education was and is responsible for the supervision of the School District and its teachers and employees and had control over the School District's teachers and employees.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Violations against Defendant School District, only

COMES NOW the Plaintiff and hereby adopts and includes the foregoing statements and allegations as if they were fully stated herein, and for her First Cause of Action against the School District, alleges and states that under the Fourth Amendment and the Fourteenth Amendment, Plaintiff had the right to Due Process and Equal Protection of the Law.

62. At all times relevant hereto, it was clearly established that Plaintiff had fundamental rights to physical safety and to be free from the infliction of unnecessary emotional pain and humiliation.

63. The School District was a state actor acting under the color of state law.

64. The School District denied Plaintiff her rights to Due Process and Equal Protection of the Law by:

   a. Failing to enact and implement adequate policies concerning sexual harassment, misconduct and abuse;
   b. Failing to remove Horner;
   c. Failing to prevent female students from being alone with Horner;
   d. Failing to investigate Horner properly, before and after these referenced allegations;
   e. Failing to hire, train, supervise, and retain Horner properly;
   f. Failing to adequately train and supervise the its employees; and
   g. Exhibiting deliberate indifference to the sexual misconduct exhibited by Horner.

65. The School District has an unconstitutional custom or policy of:

   a. Failing to report criminal misconduct;
   b. Failing to investigate criminal misconduct;
   c. Discounting the credibility of the allegations of students; and

      d.   Failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of adolescents.

66. The policy is attributable to a policymaker.

67. The resulting inadequate policies and resulting failure to train allowed Horner, as the School District's employee, to violate Plaintiff's 4th Amendment rights and Plaintiff's 14th Amendment rights to Equal Protection and Due Process.

68. Molestation of female students at a school is a danger.

69. An environment where a minor is feloniously touched, molested, and/or receives lewd or lascivious touching, comments, or communications from an adult is a dangerous environment.

70. The School District created a dangerous environment for its female minor students, including Plaintiff.

71. The School District, as a state actor, affirmatively acted to create, or increased the Plaintiff's vulnerability to, or danger from, the misconduct of Defendant Horner.

72. Plaintiff was a member of a limited and specifically definable group—namely, a female, a minor, and a student.

73. The School District created the danger or increased the Plaintiff's vulnerability to the danger by at least effectively ignoring other allegations and not immediately removing Defendant Horner from its School District after receiving notice of his misconduct.

74. The School District's conduct put Plaintiff at substantial risk of serious, immediate and proximate harm. That risk included the risk of being abused while at the School District's middle school. Indeed, Defendant Horner abused Plaintiff after the School District had actual notice of Horner's misconduct.

75. The risk of danger was obvious or known to the School District.

76. The School District's actions and inactions created an opportunity for Defendant Horner to engage in sexual misconduct.

77. The School District acted recklessly in conscious disregard of that risk.

78. The School District's conduct, when viewed in total, shocks the conscience.

WHEREFORE, premises considered, Defendant School District and the failings of its officials and employees as described above resulted in Plaintiff suffering severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation. Plaintiff prays for judgment against the Defendant School District for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332 plus interest, attorney fees and costs and whatever further relief this court deems just and equitable.

## SECOND CAUSE OF ACTION
### Violation of Title IX against Defendant School District, only

COMES NOW the Plaintiff and hereby adopts and includes the foregoing statements and allegations as if they were fully stated herein, and for her Second Cause of Action, alleges and states:

79. The School District receives federal financial assistance.

80. The School District's disregard of the sexual misconduct of Horner was so severe and objectively offensive that it deprived Plaintiff of educational opportunities and benefits provided by their public schooling.

81. The School District created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

    a. Plaintiff was a member of a protected class;

     b. Plaintiff was subjected to sexual harassment in the form of sexual pursuit and sexual misconduct by a person on campus of the School District;

     c. Plaintiff was subjected to harassment based on her sex; and

     d. Plaintiff was subjected to retaliation.

82. Plaintiff was subjected to a hostile educational environment created by the School District's lack of policies and procedures and failure to properly investigate and/or report sexual misconduct.

83. The School District and its officials and employees had knowledge, including actual knowledge, of the sexual misconduct and the resulting harassment Plaintiff suffered as a result of the School District's failure to notify law enforcement and/or the Oklahoma State Board of Education.

84. Teachers and principals are appropriate persons to receive complaints for purposes of a Title IX claim.

85. Horner's misconduct was a substantial danger and risk to the School District's female students.

86. The School District had evidence of more than a single, uncorroborated report of inappropriate touching of a female student by Horner.

87. The School District had evidence of more than a single, corroborated report of inappropriate touching of a female student by Horner.

88. The harassment suffered by Plaintiff was severe, pervasive, and objectively offensive, as made evident by Horner feloniously touching multiple female students on multiple occasions.

89. Further, the School District had actual notice of Horner's misconduct via communications to its employees, who were all acting within the course and scope of their employment by the School District.

90. The School District acted with deliberate indifference by failing to properly investigate allegations and to inform law enforcement or other governmental officials. Defendant's inactions were clearly unreasonable in light of the known circumstances.

91. The School District's actions and inactions caused female students, including Plaintiff, to undergo further misconduct by Horner and made them vulnerable to that misconduct.

92. Defendant School District persisted in its action and inaction even after it had actual knowledge of the harm suffered by victims.

93. The School District's failure to promptly and appropriately respond to the alleged sexual harassment and sexual misconduct resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefit of, and being subjected to discrimination in the School District's education program in violation of Title IX.

94. The School District failed to take immediate, effective remedial or preventative steps to resolve, investigate, or prevent further sexual assaults. Instead, the School District acted with deliberate indifference toward Plaintiff.

95. The School District's response was clearly unreasonable in light of the circumstances known to them.

96. The School District's actions, including, but not limited to its failure to effectively and immediately investigate Horner's misconduct, to send students who alleged misconduct back to Horner's class where Horner was present, to abjectly disbelieve multiple victims, and to threaten

students who disclosed Horner's misconduct was not reasonable responses to the substantial risk of sexual misconduct.

97. The School District dismissed and marginalized allegations of Horner's sexual misconduct.

98. In response to allegations of Horner's sexual misconduct, the School District did not conduct a legitimate investigation.

99. The School District's subjective assessment of Horner's victims' credibility was an insufficient investigation in light of the facts reported to the School District by those victims and previous victims.

100. The School District could have exercised its inherent authority over school property to immediately prohibit Horner from entering school property and abusing Plaintiff and other victims. It did not.

101. The School District engaged in a pattern and practice of behavior that failed to fully investigate, alert, and protect students from sexual misconduct within the school district.

102. Plaintiff has suffered physical pain, emotional distress, and psychological damage.

103. WHEREFORE, premises considered Defendant School District's actions were the direct and proximate cause of Plaintiff being deprived of a safe and harassment-free educational environment. As a result of Defendant School District's actions and inactions, Plaintiff has suffered and continues to suffer severe emotional distress and/or psychological damage and/or significant pain and suffering and/or personal humiliation.

### THIRD CAUSE OF ACTION
### Assault and Battery Against Defendant John Q. Horner, only

COMES NOW the Plaintiff and hereby adopts and includes the foregoing statements and allegations as if they were fully stated herein, and for her Third Cause of Action, alleges and states:

104. Defendant Horner acted without the consent of Plaintiff.

105. Defendant Horner acted intentionally with the intent of making harmful contact with Plaintiff.

106. Defendant Horner's actions resulted in harmful contact with Plaintiff.

107. As a direct result of the assault and battery, Plaintiff has suffered injuries and damages.

108. The actions of Defendant Horner were reckless and in disregard for the rights of others, including the rights of Plaintiff.

109. Plaintiff is entitled to recover actual and punitive damages against the Defendant Horner, individually, to deter him, and others similarly situated, from this behavior in the future and to punish him for his socially unacceptable behavior.

WHEREFORE, Plaintiff prays for judgment against the Defendant, John Q. Horner, individually, for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332, plus interest, attorney fees and costs and whatever further relief this court deems just and equitable. Additionally, if permitted under the facts of this case and by Oklahoma law, Plaintiff further prays for an award of punitive damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 United States Code §1332.

**FOURTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress Against Defendant John Q. Horner, only**

COMES NOW the Plaintiff and hereby adopts and includes the foregoing statements and allegations as if they were fully stated herein, and for her Fourth Cause of Action, alleges and states:

110. The physical and mental abuse that Defendant Horner gave to Plaintiff was done maliciously and sadistically.

111. Defendant Horner's actions were extreme and outrageous and beyond the bounds of decency.

112. Defendant Horner's actions were atrocious and utterly intolerable in a civilized society.

113. As a direct result of Defendant Horner's actions, Plaintiff was severely traumatized, beyond which a reasonable little girl could be expected to endure.

114. Defendant Horner intentionally and/or recklessly caused her emotional distress.

115. The actions of Defendant Horner was intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiff.

116. Plaintiff is entitled to recover actual and punitive damages against Defendant Horner to deter him, and others similarly situated, from this behavior in the future and to punish him for his socially unacceptable behavior.

WHEREFORE Plaintiff prays for judgment against the Defendant, John Q. Horner, individually, for a sum in excess of the amount required for diversity jurisdiction under 28 United States Code §1332, plus interest, attorney fees and costs and whatever further relief this court deems just and equitable. Additionally, if permitted under the facts of this case and by Oklahoma law, Plaintiff further prays for an award of punitive damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 United States Code §1332.

Respectfully submitted,

/s/Cameron Spradling
CAMERON SPRADLING, OBA #8509
500 North Walker Avenue, Suite 100
Oklahoma City, OK 73102
Phone: (405) 605-0610
Fax: (405) 605-0615
Email: Cameron@CameronSpradling.com

-and-

TOD S. MERCER, OBA #14157
MERCER LAW FIRM, P.C.
500 East Choctaw Avenue
McAlester, Oklahoma 74501
Phone: (918) 420-5850
Fax: (918) 420-5855
Email: Tod@TodMercerLaw.com

-and-

CHASE MCBRIDE, OBA #32061
MCBRIDE & MCBRIDE
106 N. Rowe Street
Pryor, OK 74361
Phone: (918) 825-3038
Email:CMcBride@Lawyersof Oklahoma.com

ATTORNEYS FOR PLAINTIFF